**SUMMONS - CIVIL**
(Except Family Actions)
JD-CV-1 Rev. 1-2000
C.G.S. § 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs 3-1 thru 3-21, 8-1

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.state.ct.us

| "X" ONE OF THE FOLLOWING: |
| --- |
| *Amount, legal interest or property in demand, exclusive of interest and costs is:* |
| ☐ less than $2,500 |
| ☐ $2,500 through $14,999.99 |
| ☒ $15,000 or more |
| ("X" if applicable) |
| ☐ Claiming other relief in addition to or in lieu of money or damages. |

**INSTRUCTIONS**
1. Type or print legibly; sign original summons and conform all copies of the summons.
2. Prepare or photocopy conformed summons for each defendant.
3. Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint. Also, if there are more than 2 plaintiffs or 4 defendants prepare form JD-CV-2 and attach it to the original and all copies of the complaint.
4. After service has been made by a proper officer, file original papers and officer's return with the clerk of court.
5. The party recognized to pay costs must appear personally before the authority taking the recognizance.
6. Do not use this form for actions in which an attachment, garnishment or replevy is being sought. See Practice Book Section 8-1 for other exceptions.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| RETURN DATE (Mo., day, yr.) (Must be a Tuesday) | 5/4/2004 |
| --- | --- |

| ☒ JUDICIAL DISTRICT | ☐ G.A. NO. | AT (Town in which writ is returnable) (C.G.S. 51-346, 51-349) | CASE TYPE (See JD-CV-1c) |
| ☐ HOUSING SESSION | | New Haven | Major C   Minor 90 |

ADDRESS OF COURT CLERK WHERE WRIT AND OTHER PAPERS SHALL BE FILED (No., street, town and zip code) (C.G.S. 51-346, 51-350)

TELEPHONE NO. (w/area code) 203.503.6800

235 Church Street, New Haven, Connecticut  06510

| PARTIES | NAME AND ADDRESS OF EACH PARTY (No., street, town and zip code) | NOTE: Individuals' Names: Last, First, Middle Initial   ☐ Form JD-CV-2 attached | PTY NO. |
| --- | --- | --- | --- |
| FIRST NAMED PLAINTIFF | Mediplex of Connecticut, Inc., 101 Sun Avenue N.E., Albuquerque, New Mexico 87109 | | 01 |
| Additional Plaintiff | | | 02 |
| FIRST NAMED DEFENDANT | 745 Highland Avenue Operating Company, LLC, c/o Agent for Service: Connecticut Secretary of State, 30 Trinity Street, Hartford, CT 06106 | | 50 |
| Additional Defendant | | | 51 |
| Additional Defendant | | | 52 |
| Additional Defendant | | | 53 |

**NOTICE TO EACH DEFENDANT**

1. **YOU ARE BEING SUED.**
2. This paper is a Summons in a lawsuit.
3. The Complaint attached to these papers states the claims that each Plaintiff is making against you in this lawsuit.
4. To respond to this Summons, or to be informed of further proceedings, you or your attorney must file a form called an "Appearance" with the Clerk of the above-named Court at the above Court address on or before the second day after the above Return Date.
5. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default.

6. The "Appearance" form may be obtained at the above Court address.
7. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately take the Summons and Complaint to your insurance representative.
8. If you have questions about the Summons and Complaint, you should consult an attorney promptly. The Clerk of Court is not permitted to give advice on legal questions.

| DATE 4/8/2004 | SIGNED (Sign and "X" proper box) | ☒ Comm. of Superior Court ☐ Assistant Clerk | TYPE IN NAME OF PERSON SIGNING AT LEFT Simon I. Allentuch, Esq. |
| --- | --- | --- | --- |

**FOR THE PLAINTIFF(S) PLEASE ENTER THE APPEARANCE OF:**

| NAME AND ADDRESS OF ATTORNEY, LAW FIRM OR PLAINTIFF IF PRO SE (No., street, town and zip code) | TELEPHONE NUMBER | JURIS NO. (if atty. or law firm) |
| --- | --- | --- |
| Neubert Pepe & Monteith PC, 195 Church St. New Haven CT 06510 | 203.821.2000 | 407996 |

| NAME AND ADDRESS OF PERSON RECOGNIZED TO PROSECUTE IN THE AMOUNT OF $250 (No., street, town and zip code) | SIGNATURE OF PLAINTIFF IF PRO SE |
| --- | --- |
| Elizabeth A. Crafts, c/o 195 Church St., New Haven CT  06510 | |

| # PLFS. | # DEFS. | # CNTS. | SIGNED (Official taking recognizance) "X" proper box | ☒ Comm. of Superior Court ☐ Assistant Clerk | For Court Use Only |
| --- | --- | --- | --- | --- | --- |
| 1 | 1 | 6 | | | FILE DATE |

**IF THIS SUMMONS IS SIGNED BY A CLERK:**
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service thereof.

| I hereby certify I have read and understand the above: | SIGNED (Pro Se Plaintiff) | DATE SIGNED | DOCKET NO. |
| --- | --- | --- | --- |

RETURN DATE: MAY 4, 2004

MEDIPLEX OF CONNECTICUT, INC.,

                 Plaintiff,

V.

745 HIGHLAND AVENUE OPERATING
COMPANY, LLC,

                 Defendant.

SUPERIOR COURT

JUDICIAL DISTRICT OF NEW
HAVEN AT NEW HAVEN

APRIL 8, 2004

## COMPLAINT

The plaintiff Mediplex of Connecticut, Inc., by its attorneys Neubert, Pepe & Monteith,

P.C. complaining of the defendant, 745 Highland Avenue Operating Company, LLC, alleges as

follows:

COUNT ONE (BREACH OF CONTRACT)

    1.    The plaintiff, Mediplex of Connecticut, Inc. ("Mediplex") is a Connecticut

corporation with a principal business address of 101 Sun Avenue, N.E., Albuquerque, New

Mexico.

    2.    The defendant, 745 Highland Avenue Operating Company, LLC ("Highland

Avenue Co.") is a Delaware limited liability company registered to do business in the State of

Connecticut and, in fact, doing business as a long term health care facility located at 745

Highland Avenue, Cheshire, Connecticut 06410 (the "Facility").

3.    On October 14, 1999 (the "Petition Date"), Mediplex, together with its parent company, Sun Healthcare Group, Inc. ("Sun Healthcare") and other direct and indirect subsidiaries of Sun Healthcare, commenced cases under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

4.    On February 4, 2002, the Bankruptcy Court authorized Mediplex to transfer the Facility to Highland Avenue Co.

5.    On or about August 30, 2002, Mediplex entered into an Operations Transfer Agreement (the "OTA") with Highland Avenue Co.  A true and correct copy of the OTA is attached hereto as Exhibit A.

6.    Prior to execution of the OTA, Mediplex was the licensed operator of a long-term care facility located at 745 Highland Avenue, Cheshire, Connecticut.

7.    The OTA was entered into by Mediplex and Highland Avenue Co. in order to facilitate the transition of operational and financial responsibility for the Facility from Mediplex to Highland Avenue Co.

8.    Pursuant to paragraph 6.1 of the OTA, Mediplex retains its right, title and interest in and to all unpaid accounts receivable with respect to the Facility which relates to services provided during the period prior to the effective date of the OTA.  This includes any accounts receivable arising from rate adjustments for services provided prior to the effective date of the OTA even if such adjustments occurred after the effective date of the OTA.

9.    The effective date (the "Effective Date") of the OTA is defined in the OTA as the date that Highland Avenue Co. became duly licensed by the State of Connecticut, Department of Public Health to operate the Facility or received assurances, acceptable to Mediplex, that it would be so licensed and certified. The parties agreed that the Effective Date of the OTA was September 1, 2002.

10.    The OTA requires Mediplex to provide Highland Avenue Co. with a schedule setting forth by patient its outstanding accounts receivable as of the Effective Date. Mediplex fully complied with this requirement.

11.    The OTA also provides that Highland Avenue Co. must forward any payments it receives from third-party payors, such as Medicare, Medicaid and the Veterans' Administration, that relates to care provided in the period prior to the Effective Date, to Mediplex together with the applicable remittance advice. Highland Avenue Co. is required to forward these payments by the last day of the calendar month, if the payment was received on or prior to the 15th of said month, or within ten (10) business days after the end of said month, if the payment was received after the 15th of said month.

12.    The OTA provides that if Highland Avenue Co. received payments during the first forty-five (45) days after the Effective Date concerning private pay patients who had outstanding balances as of the Effective Date, and the payor failed to designate how it wanted the payments applied, Mediplex is entitled to the entire payment up to the amount of any pre-Effective Date

3

balances. Highland Avenue Co. is only entitled to payment for any amount due for post-Effective Date care after the pre-Effective Date balances are paid.

13.    Pursuant to paragraph 6.6 of the OTA, for the six-month period following the Effective Date or until Mediplex receives payment of all pre-Effective Date accounts receivable, Highland Avenue Co. is required to provide Mediplex with an accounting by the 20th day of each month setting forth all amounts received by Highland Avenue Co. during the preceding month with respect to pre-Effective Date accounts receivable. Paragraph 6.6 of the OTA also gives Mediplex the right to inspect all cash receipts of Highland Avenue Co. in order to confirm that Highland Avenue Co. has complied with its obligations under that paragraph of the OTA.

14.    Pursuant to paragraph 7.1 of the OTA, Highland Avenue Co. is liable for all operating expenses incurred on or after the Effective Date and Mediplex is entitled to reimbursement for any prepaid expenses to the extent that such expenses are attributable to period on or after the Effective Date.

15.    Mediplex's records show that it has outstanding accounts receivable in the amount of $404,000.00 (the "Mediplex Accounts Receivable") that have not been paid to it.

16.    Despite demands made in the regular course of business, Highland Avenue Co. has failed and refused to provide monthly accountings pursuant to paragraph 6.6 of the OTA. As a result, Mediplex has been unable to determine precisely how much of the Mediplex Accounts Receivable were collected by Highland Avenue Co., all of which must be turned over to Mediplex.

17.    Mediplex paid expenses in the total amount of $79,130.95 attributable to periods on or after the Effective Date (the "Highland Avenue Co. Accounts Payable").

18.    Despite demands made in the regular course of business, Highland Avenue Co. breached the OTA by failing to reimburse Mediplex for Highland Avenue Co. Accounts Payable. Highland Avenue Co. breached the OTA and continues in breach of the OTA by failing to provide monthly accountings, by failing to remit the Mediplex Accounts Receivable, and by failing to reimburse Mediplex for the Highland Avenue Co. Accounts Payable.

19.    Mediplex has suffered damages as a direct and the proximate cause of Highland Avenue Co.'s breaches of the OTA.

20.    By virtue of the foregoing, Highland Avenue Co. is liable to Mediplex in the amount of $483,130.95, plus interest and costs.

COUNT II (CONVERSION)

1-20.    Mediplex incorporates by reference each of the allegations set forth in paragraphs 1 through 20 of the First Count as though fully set forth herein.

21.    Pursuant to paragraph 6 of the OTA, the Mediplex Accounts Receivable remained the property of Mediplex.

22.    Highland Avenue Co. has knowingly received the Mediplex Accounts Receivable and has, in violation of its obligations pursuant to the OTA, retained the Mediplex Accounts Receivable rather than delivering same to Mediplex.

5

23.    Instead of delivering the Mediplex Accounts Receivable to Mediplex, Highland Avenue Co. converted the Mediplex Accounts Receivable for its own benefit.

24.    Mediplex has suffered damages as a direct and proximate cause of Highland Avenue Co.'s conversion of the Mediplex Accounts Receivable, entitling Mediplex to judgment in an amount equal to the Mediplex Accounts Receivable and Accounts Payable, plus interest and costs.

COUNT III (STATUTORY THEFT)

1-20.    Mediplex incorporates by reference each of the allegations set forth in paragraphs 1 through 20 of the First Count as though fully set forth herein.

21.    By virtue of its wrongful and unlawful conduct, the defendant intended to deprive the plaintiff of monetary funds belonging to the plaintiff.

22.    The defendant's aforesaid acts and conduct constitute theft pursuant to the provisions of General Statutes § 52-564.

23.    Despite due demand by the plaintiff, the defendant has not disgorged any of the misappropriated funds.

24.    The plaintiff has suffered substantial damages as a result of the theft of the aforementioned monetary funds belonging to the plaintiff.

COUNT IV (ACCOUNTING)

1-20.    Mediplex incorporates by reference each of the allegations set forth in paragraphs 1 through 20 of the First Count as though fully set forth herein.

6

21. Highland Avenue Co. owed and continues to owe Mediplex a fiduciary duty when it agreed to collect and hold funds for Mediplex and provide Mediplex an accounting of funds received.

22. Highland Avenue Co. breached its obligation under paragraph 6.6 of the OTA by failing to provide monthly accountings to Mediplex for the Mediplex Accounts Receivable.

23. Highland Avenue violated its fiduciary duty to Mediplex when it failed to disgorge those funds as required by OTA and following due demand by Mediplex. Highland Avenue further violated its fiduciary duty to Mediplex by failing to provide an accounting of the sums it received.

24. As a result of these breaches of fiduciary duty, Mediplex has been damaged. is entitled to an accounting, by month, for all such payments received by Highland Avenue Co.

COUNT V (CONSTRUCTIVE TRUST)

1-20. Mediplex incorporates by reference each of the allegations set forth in paragraphs 1 through 20 of the First Count as though fully set forth herein.

21. Highland Avenue Co. currently holds all or a portion of the Mediplex Accounts Receivable. Defendant's failure to transfer these funds, or provide required documentation concerning these funds, is wrongful.

22. The receipt of the Mediplex Accounts Receivable by Highland Avenue Co. should be held to have created a constructive trust for the benefit of Mediplex.

7

COUNT VI (BREACH OF FIDUCIARY DUTY)

1-20.   Mediplex incorporates by reference each of the allegations set forth in paragraphs 1 through 20 of the First Count as though fully set forth herein.

21.    Highland Avenue Co. owed and continues to owe Mediplex a fiduciary duty when it agreed to collect and hold funds for Mediplex and provide Mediplex an accounting of funds received.

22.    Highland Avenue Co. breached its obligation under paragraph 6.6 of the OTA by failing to provide monthly accountings to Mediplex for the Mediplex Accounts Receivable.

23.    Highland Avenue violated its fiduciary duty to Mediplex when it failed to disgorge those funds as required by OTA and following due demand by Mediplex. Highland Avenue further violated its fiduciary duty to Mediplex by failing to provide an accounting of the sums it received.

24.    As a result of these breaches of fiduciary duty, Mediplex has been damaged in an amount to be determined at trial.

**WHEREFORE**, the plaintiff claims:

1.    Monetary and compensatory damages;

2.    Restitution of the monetary funds wrongfully held by defendant plus interest;

3.    An accounting of all payments defendant received concerning accounts receivable relating to services provided prior to the Effective Date of the OTA;

4.    Punitive damages;

8

5.      Attorney fees;

6.      Treble damages pursuant to General Statutes § 52-564;

7.      Double damages pursuant to General Statutes § 52-565;

8.      Costs;

9.      Interest; and

10.     Such other and further equitable relief as the Court may deem proper.

PLAINTIFF,
MEDIPLEX OF CONNECTICUT, INC.

By: _____
        Douglas S. Skalka, Esq.
        Simon I. Allentuch, Esq.
        NEUBERT, PEPE & MONTEITH, P.C.
        195 Church Street, 13th Floor
        New Haven, Connecticut 06510
        Tel: (203) 821-20000
        Juris No.: 407996

9

EXECUTION COPY

## OPERATIONS TRANSFER AGREEMENT

THIS AGREEMENT is made and entered into as of the 30th day of August, 2002, and is effective as of the Effective Date (as defined below), by and between MEDIPLEX OF CONNECTICUT, INC., a Connecticut corporation ("Licensee") and 745 HIGHLAND AVENUE OPERATING COMPANY, LLC a Delaware limited liability company ("New Operator").

## RECITALS

A.    Licensee is the licensed operator of that certain long term care facility described on Exhibit A hereto (the "Facility").

B.    On October 14, 1999 Licensee, along with various affiliate parent and subsidiary entities, including its indirect parent corporation, Sun Healthcare Group, Inc. filed for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

C.    Pursuant to a January 28, 2002 Stipulation and Order from the United States Bankruptcy Court for the District of Delaware, Licensee was authorized to transfer the Facility on the terms and conditions set forth in the Stipulation and Order.

D.    Licensee emerged from bankruptcy protection on February 28, 2002.

E.    New Operator has agreed to lease the Facility pursuant to a lease agreement with 745 Highland Avenue, LLC ("Landlord") effective as of the Effective Date (as hereinafter defined). For purposes hereof, the Effective Date shall be the date New Operator is duly licensed by the State of Connecticut, Department of Public Health ("DPH") to operate the Facility under the laws of the State of Connecticut and has submitted applications to participate in Medicare and Medicaid, or has received assurances, acceptable to New Operator and Licensee, that it will be so licensed and certified, which date the parties acknowledge and agree will be September 1, 2002.

F.    In order to facilitate a transition of operational and financial responsibility from Licensee to New Operator in accordance with the January 28, 2002 Stipulation and Order, Licensee and New Operator are desirous of documenting certain terms and conditions relevant to the transition of operational and financial responsibility from Licensee to New Operator.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants of the parties set forth herein, IT IS HEREBY AGREED AS FOLLOWS:

1.    Change of Ownership.

1.1    If and to the extent it has not done so already as of the date of the execution of this Agreement ("Execution Date"), New Operator shall proceed with all

due diligence to file such documentation with DPH as may be necessary to secure a nursing home license under Chapter 19a of the Connecticut General Statutes.

1.2    New Operator shall be responsible for any and all costs associated with the change of ownership process including, but not limited to, any costs of implementing any corrective measures or changes required to bring the Facility into compliance with the currently effective licensure, certification, Life Safety and building code requirements if and to the extent it is not currently in such compliance and such compliance is required as a matter of state licensure or federal Medicare or Medicaid certification requirements, including but not limited to inspections, evaluations, repairs, replacements, corrective measures or changes required pursuant to DPH's change of ownership inspection as well costs associated with preparation of the Plan of Correction required by DPH's change of ownership inspection. Accordingly, Licensee shall provide New Operator with reasonable access to the Facility and Facility employees prior to the Effective Date subject to the following terms and conditions (the "Access Conditions"): (i) New Operator shall submit any request for access to the Facility to Licensee's Regional Manager which shall specify in reasonable detail the purpose of the proposed visit, which purpose shall be subject to the review and approval of Licensee, which approval shall not be unreasonably withheld, (ii) any such request for access shall be provided no less than three (3) business days prior to the date on which New Operator would like to enter the Facility and (iii) any visits to the Facility or discussions with the employees of the Facility shall be conducted in a manner which is not disruptive to Licensee's operations at the Facility.

1.3    As of the Effective Date, Licensee shall assign to New Operator and New Operator shall accept assignment of Licensee's Medicare provider agreement pursuant to 42 C.F.R. 489.17.

1.4    In the event that on the Effective Date, New Operator has not been issued a license to operate the Facility but has received assurances satisfactory to New Operator and Licensee that a license to operate the Facility will be issued to New Operator after the Effective Date, but dated as of the Effective Date, New Operator shall indemnify, defend and hold harmless Licensee from and against any and all damages, costs, liabilities and expenses, including, but not limited to, reasonable attorneys fees which Licensee may incur as a result of operation of the Facility by New Operator.

1.5    New Operator shall bear all of the risks associated with the Facility's licensure, including, without limitation, the risk that the New Operator's license application will be denied and that no provisional or permanent license will be issued to New Operator, in which events, New Operator and Landlord will need to identify an acceptable, suitable licensee to whom the DPH is prepared to issue a license.

2.    Conveyance of Inventory. For and in consideration of $ 1.00 (the "Purchase Price"), which shall be due and payable in immediately available funds on the Effective Date, Licensee shall sell, transfer and convey to New Operator on the Effective Date, all

consumable inventories of every kind and nature whatsoever (specifically including, but not limited to, all pharmacy supplies, medical supplies, office supplies, other supplies and foodstuffs) owned by Licensee as of the Effective Date and located at the Facility (the "Inventory"); provided, however, that in light of the limited consideration being paid by New Operator for the Inventory, Licensee's only obligation shall be to ensure that the amount of Inventory at the Facility on the Effective Date meets any minimum requirements established under applicable state law. Licensee shall have no obligation to deliver the Inventory to any location other than the Facility, it being understood and agreed that the presence of the Inventory at the Facility on the Effective Date shall constitute delivery thereof. New Operator shall pay any sales or use tax which may be payable with respect to the sale of the Inventory to New Operator. Licensee shall execute a Bill of Sale in form and substance acceptable to Licensee and New Operator which confirms the conveyance of the Inventory provided for herein.

3.      Transfer of Patient Trust Funds.

3.1.    Within five (5) days after the Effective Date, Licensee shall prepare and deliver to New Operator a true, correct, and complete accounting and inventory (properly reconciled) of any patient trust funds and residents' property held by Licensee as of the Effective Date in trust for patients at the Facility (collectively the "Patient Trust Funds").

3.2.    Within five (5) days after the Effective Date, Licensee hereby agrees to transfer to New Operator the Patient Trust Funds and New Operator hereby agrees that it will accept such Patient Trust Funds in trust for the residents/responsible parties and be accountable to the residents/responsible parties for such Patient Trust Funds in accordance with the terms of this Agreement and applicable statutory and regulatory requirements

3.3.    New Operator shall have no responsibility to the applicable resident/responsible party and regulatory authorities in the event the Patient Trust Funds delivered by Licensee to New Operator pursuant to Section 3.2 are demonstrated to be less than the full amount of the Patient Trust Funds for such resident as of the Effective Date, for inaccuracies in the accounting and inventory provided by Licensee, or for claims which arise from actions or omissions of Licensee with respect to the Patient Trust Funds prior to the Effective Date, it being understood and agreed that Licensee shall be and remain responsible for the manner in which it handled such Patient Trust Funds prior to the Effective Date.

3.4.    Licensee shall have no responsibility to the applicable resident/responsible party and regulatory authorities with respect to any Patient Trust Funds delivered to New Operator.

4.      Billing and Cost Reports.

4.1     As New Operator will accept assignment of Licensee's Medicare provider

agreement, Licensee shall not interfere with New Operator's ability to submit and be paid for Medicare claims for services rendered by New Operator to residents at the Facility after the Effective Date. Licensee shall ensure timely filing of its claims for services rendered to residents up to the Effective Date.

4.2    Licensee shall prepare and file with the appropriate Medicare and Medicaid agencies any final cost reports with respect to its operation of the Facility which are required to be filed by law under the terms of the Medicare and Medicaid Programs. The final Medicaid cost report shall be filed by Licensee within ninety (90) days after the Effective Date. The final Medicare cost report shall be filed by Licensee within thirty (30) days after its receipt of the final provider statistical and reimbursement (PS&R) report from its fiscal intermediary. Within ten (10) business days of filing, Licensee shall provide New Operator with copies of such cost reports, together with copies of any amendments thereto and correspondence related to such final cost reports.

4.3    In the event after the Effective Date Licensee has actual knowledge, whether discovered by Licensee or brought o Licensee's attention by a third party, of any mistakes, errors or underreporting in its prior years' Medicare and Medicaid cost reports with respect to the Facility, it will file amended cost reports in accordance with the requirements of applicable law and will provide New Operator with copies thereof within ten (10) business days of filing.

5.    Employees.

5.1    Licensee shall terminate all of the Facility employees (the "Facility Employees") effective as of the Effective Date. Licensee shall pay directly to the Facility Employees all wages and benefits which Licensee is required by law to pay to the Facility Employees and which are due as of the Effective Date, except for any paid time off ("PTO") earned or accrued by the Facility Employees. Licensee shall pay to New Operator on the Effective Date the sum of Eighty Five Thousand and no/100 Dollars ($85,000) in consideration for the earned and accrued PTO which may be due and owing to the Facility Employees hired by New Operator as of the Effective Date (the "Retained Employees"), according to Licensee's schedule of earned and accrued PTO. New Operator shall assume the obligation to pay any and all such earned and accrued PTO which is owing to the Retained Employees as of the Effective Date and shall indemnify, defend and hold harmless Licensee from and against any and all damages, costs, liabilities and expenses, including, but not limited to, reasonable attorneys fees, which Licensee may incur as a result of any failure of New Operator to pay any such earned or accrued PTO to the Retained Employees pursuant to this Section 5.1, including, but not limited to, any such amounts incurred by Licensee responding to or defending or preparing for the defense of or appealing any employee claims relating thereto. On the Effective Date, Licensee shall provide New Operator with a schedule of all such earned or accrued PTO for all of the Facility Employees as of the Effective Date.

5.2.    (a)    It is the understanding and belief of Licensee and New Operator

that Licensee currently employs more than one hundred (100) workers at the Facility and that Licensee is therefore required to give notice to the Facility Employees of the "closure" thereof under the Worker Adjustment and Retraining Notification Act (the "WARN Act") and/or under any comparable State law. However, the New Operator has advised the Licensee that it presently intends to offer employment to at least two-thirds (2/3) of the Facility Employees who, as of the Effective Date, work at the Facility and have been employed for 20 hours or more per week on average and provide services solely to the Facility and in reliance on such statements Licensee and New Operator have agreed that a closure notice will not be provided to the Facility Employees.

(b)     As of the Execution Date, Licensee and its direct and indirect parent and subsidiaries and affiliates may not solicit or in any other manner recruit or redirect away from the Facility individuals who are Facility Employees as of the Execution Date other than those who elect not to accept an offer of employment by New Operator; which offer of employment New Operator agrees to extend on or before the Effective Date. Notwithstanding the foregoing, Licensee shall not be deemed to be in violation of this Section 5.2(b) in the event a Facility Employee responds to an internally posted job advertisement made available to all of the employees of Licensee and/or Sun, as applicable.

(c)     In order to facilitate Licensee's compliance with Section 5.2(b), New Operator agrees to cooperate with Licensee to provide information concerning which Facility Employees, if any, are made an offer of employment by New Operator and which Facility Employees accept such offer of employment.

5.3.     Licensee shall offer and provide, as appropriate, group health plan continuation coverage pursuant to the requirements of Section 601, et seq. of ERISA and Section 4980B of the Internal Revenue Code ("COBRA") to all of the employees of the Facility to whom it is required to offer the same under applicable law. Licensee acknowledges and agrees that New Operator is not assuming any of Licensee's obligations to its employees under COBRA or otherwise. New Operator agrees to cooperate with Licensee in providing information concerning which employees, if any, are retained by New Operator after the Effective Date. As of the Effective Date, all Retained Employees shall be eligible for participation in a group health plan (as defined for purposes of Internal Revenue Code Section 4980B) established and maintained by New Operator for the general benefit of its employees and their dependents.

5.4.     Licensee shall provide New Operator reasonable access to Facility Employees and, unless prohibited by law, employee files, prior to the contemplated Effective Date subject to Licensee's compliance with the Access Conditions.

6.     Accounts Receivable.

6.1.     Licensee shall retain its right, title and interest in and to all unpaid accounts receivable with respect to the Facility which relate to services provided during

the period prior to the Effective Date, including, but not limited to, any accounts receivable arising from rate adjustments which relate to services provided during the period prior to the Effective Date even if such adjustments occur after the Effective Date. Within ten (10) business days of the Effective Date, Licensee shall provide New Operator with a schedule setting forth by patient its outstanding accounts receivable as of the Effective Date.

6.2.    Payments received by Licensee and New Operator from and after the Effective Date from third party payors, such as Medicare, Medicaid and VA, shall be handled as follows:

6.2.1.    If such payments either specifically indicate on the accompanying remittance advice, or if the parties agree, that they relate to the period prior to the Effective Date, they shall be (i) retained by Licensee, if such payments are received by Licensee, or (ii) forwarded to Licensee by New Operator, along with the applicable remittance advice, in accordance with the remittance schedule set forth in Section 6.2.4; and

6.2.2.    If such payments indicate on the accompanying remittance advice, or if the parties agree, that they relate to the period on or after the Effective Date they shall be (i) retained by New Operator, if such payments are received by New Operator, or (ii) forwarded to New Operator by Licensee, along with the applicable remittance advice, in accordance with the remittance schedule set forth in Section 6.2.4, if such payments are received by Licensee; and

6.2.3.    If such payments indicate on the accompanying remittance advice, or if the parties agree, that they relate to periods for which both parties are entitled to reimbursement under the terms hereof, (i) the portion thereof which relates to the period on or after the Effective Date shall be retained by New Operator and the balance shall be remitted to Licensee in accordance with the remittance schedule set forth in Section 6.2.4, if such payments are received by New Operator or (ii) the portion thereof which relates to the period on or after the Effective Date remitted to New Operator in accordance with the remittance schedule set forth in Section 6.2.4, and the balance shall be retained by Licensee, if such payments are received by Licensee.

6.2.4.    Any payments due to Licensee from New Operator or to New Operator from Licensee shall be remitted in accordance with the following schedule: If such payment is received on or prior to the 15th day of the month, the same shall be remitted by the last day of the month; if such payment is received after the 15th day of the month and prior to the last day of the month, the same shall be remitted within ten (10) business days after the end of the month.

6.3.    Any payments received by New Operator during the first forty five (45) days after the Effective Date from or on behalf of private pay patients with outstanding balances as of the Effective Date which fail to designate the period to which they relate,

will first be applied by New Operator to reduce the patient's pre-Effective Date balances, with any excess applied to reduce any balances due for services rendered by New Operator after the Effective Date. Thereafter all non-designated payments will first be applied to any post-Effective Date balances, with the excess, if any, applied to the extent of any balances due for services rendered by Licensee prior to the Effective Date.

6.4.    Nothing herein shall be deemed to limit in any way Licensee's rights and remedies to recover accounts receivable due and owing Licensee under the terms of this Agreement.

6.5.    In the event the parties mutually determine that any payment hereunder was misapplied by the parties, the party which erroneously received said payment shall remit the same to the other within ten (10) business days after said determination is made.

6.6.    For the six (6) month period following the Effective Date or until Licensee receives payment of all accounts receivables attributed to the operation of the Facility prior to the Effective Date, whichever is sooner, New Operator shall provide Licensee with an accounting by the 20th day of each month setting forth all amounts received by New Operator during the preceding month with respect to the accounts receivable of Licensee which are set forth in the schedule provided by Licensee pursuant to Section 6.1. New Operator shall deliver such accounting to Licensee at the following address: Raquel Leyba, Corporate Accounting Office, Sun Healthcare Group, Inc., 101 Sun Avenue NE, Albuquerque, NM 87109. Licensee shall have the right to inspect all cash receipts of New Operator during weekday business hours in order to confirm New Operator's compliance with the obligations imposed on it under this Section.

6.7.    In the event the state agencies making payments for services provided to the Medicaid residents make any claim against New Operator for reimbursement of overpayments made to Licensee related to services provided prior to the Effective Date, including any claim for depreciation recapture arising from the transfer of the Facility from Licensee to New Operator (the "Prior Period Overpayments"), New Operator will promptly send to Licensee a copy of any such claim and Licensee shall have the right to pursue an appeal of such claim; provided, however, if the Prior Period Overpayments are recouped from New Operator (whether or not an appeal thereof is then pending) then, upon receipt of a written demand for payment from New Operator accompanied by appropriate supporting documentation showing the amount recovered from New Operator for any such Prior Period Overpayments (a "Reimbursement Request"), Licensee shall, within ten (10) business days of receipt of a Reimbursement Request from New Operator, reimburse New Operator for the amount set forth in the Reimbursement Request.

7.    Prorations.

7.1.    As between New Operator and Licensee, revenues and expenses, utility charges for the billing period in which the Effective Date occurs, real and personal property taxes, prepaid expenses (including, but not limited to, the premiums for any

flood insurance coverage which may be in effect with respect to the Facility and provide coverage for a period which extends beyond the Effective Date) and other related items of revenue or expense attributable to the Facility shall be prorated between Licensee and New Operator as of the Effective Date. In general, such prorations shall be made so that as between New Operator and Licensee, Licensee shall be reimbursed for prepaid expense items to the extent that the same are attributable to periods after the Effective Date and to charge Licensee for unpaid expenses to the extent that the same are attributable to periods prior to the Effective Date. The intent of this provision shall be implemented by New Operator remitting to Licensee any invoices which describe goods or services provided to the Facility before the Effective Date and by New Operator assuming responsibility for the payment of any invoices which describe goods or services provided to the Facility on and after the Effective Date.

    7.2.    All such prorations shall be made on the basis of actual days elapsed in the relevant accounting or revenue period and shall be based on the most recent information available to Licensee. Utility charges which are not metered and read on the Effective Date shall be estimated based on prior charges, and shall be re-prorated upon receipt of statements therefor as of the Effective Date.

    7.3.    All amounts which are subject to proration under the terms of this Agreement and which require adjustment after the Effective Date shall be settled within thirty (30) days after the Effective Date or, in the event the information necessary for such adjustment is not available within said thirty (30) day period, then within ten (10) business days of receipt of information by either party necessary to settle the amounts subject to proration.

    7.4.    On the Effective Date, Licensee shall remove any petty cash maintained at the Facility.

    7.5.    New Operator acknowledges and agrees that Licensee shall retain all of its right, title and interest in and to any insurance proceeds or condemnation awards which may be due and owing to Licensee as a result of any covered incidents of damage or destruction to, or takings of, the Facility or any part thereof occurring prior to the Effective Date even if the same are not paid until after the Effective Date, to the extent such proceeds are necessary to reimburse Licensee for amounts expended prior to the Effective Date to repair or restore said damage or destruction or takings to the Facility. In furtherance of the foregoing, New Operator agrees (i) upon reasonable advance notice and during normal business hours to provide such access to the Facility as may be required by Licensee or any third party adjuster or representative of a condemning authority to settle any such insurance claims/condemnation proceedings and (ii) in the event the same are directed to New Operator or the Facility rather than to Licensee to remit such insurance proceeds/condemnation awards to Licensee within ten (10) business days after receipt thereof.

    8.    Access to Records.

8.1.    On the Effective Date, Licensee shall deliver to New Operator all of the records of the Facility.  Nothing herein shall be construed as precluding Licensee from removing from the Facility copies of the financial records which relate to its operations at the Facility and/or the originals of any proprietary materials related to its overall corporate operations that are not necessary to the efficient operation of the Facility; provided, however, from and after the Effective Date Licensee shall, upon request, provide New Operator with reasonable access to such financial records to the extent New Operator needs access to any such financial records in order to challenge to any future rates or challenge to any past cost reports shall remain at the Facility.

8.2.    From and after the Effective Date and for a period of five (5) years thereafter, New Operator shall allow Licensee and its agents and representatives to have reasonable access to (upon reasonable prior notice and during normal business hours), and to make copies of, the books and records and supporting material of the Facility relating to the period prior to and including the Effective Date, to the extent reasonably necessary to enable Licensee to among other things investigate and defend malpractice, employee or other claims, to file or defend cost reports and tax returns, to verify accounts receivable collections due Licensee and to file exceptions to the Medicare routine cost limits for the cost reporting periods prior to and including the Effective Date.

8.3.    Subject to Section 8.2, Licensee shall have the right, at Licensee's sole cost and expense, within five (5) days of the delivery of a request therefor to New Operator to enter the Facility and remove originals or copies of any records delivered to New Operator; provided, however, if directed by Licensee in its request to New Operator, New Operator shall within such five day period, forward such records to Licensee to the address designated by Licensee; and provided, further, that if, for purposes of litigation involving a patient or employee to whom such record relates, an officer of or counsel for Licensee certifies that an original of such record must be produced in order to comply with applicable law or the order of a court of competent jurisdiction in connection with such litigation then the records so delivered or removed shall be an original. Any record so removed shall promptly be returned to New Operator following its use, and nothing herein shall be interpreted to prohibit New Operator from retaining copies of any such documents.

8.4.    New Operator agrees to maintain such books, records and other material comprising records of the Facility's operations prior to the Effective Date that have been received by New Operator from Licensee or otherwise, including, but not limited to, patient records and records of patient funds, to the extent required by law, but in no event less than three (3) years, and shall, at Licensee's request, allow Licensee a reasonable opportunity to remove such documents, at Licensee's expense, at such time after such record retention period as may be required by law as New Operator shall decide to dispose of such documents.

9.    <u>Operating Contracts and Vehicles.</u>

9.1.    Prior to the Execution Date, Licensee has provided New Operator with copies of all vendor, service and other agreements relating to the Facility (the "Operating Contracts"), a list of which is attached hereto as Exhibit B (the "Operating Contract Schedule"). Licensee acknowledges and agrees that New Operator has informed Licensee that New Operator only wishes to have assigned to it as of the Effective Date the Hospital Transfer Agreement with Griffin Hospital included in the Operating Contract Schedule. Licensee shall provide commercially reasonable cooperation to New Operator in connection with the assignment of such Operating Contract to New Operator. Licensee shall terminate all of the Operating Contracts not assigned to New Operator and shall have the right to remove from the Facility any equipment which is subject to such unassigned Operating Contracts or which is subject to a Master Operating Contract (as hereinafter defined). For purposes hereof, a Master Operating Contract shall be a contract in the name of Sun or any affiliate thereof and which covers equipment or services located at or provided to facilities operated by Licensee, Sun or its or their affiliates in addition to the Facility.

9.2.    Licensee and New Operator acknowledge and agree that the vehicles listed on Exhibit C are located at the Facility and, on the Effective Date, shall either remain at the Facility or be removed from the Facility, as set forth more fully in Exhibit C.

9.3.    Licensee and New Operator acknowledge and agree that in the event Licensee elects to terminate any of the Operating Contracts not assigned to New Operator, and such termination is noticed on or before the Effective Date but will not be effective until after the Effective Date as a result of notice provisions set forth in such Operating Contracts (the "Termination Date"), if and to the extent that New Operator derives any benefit from the goods or services provided under such Operating Contract between the Effective Date and the Termination Date, New Operator shall within thirty (30) days after a written demand therefore, reimburse Licensee for any payments under such Operating Contracts made by Licensee between the Effective Date and the Termination Date.

10.    Policy and Procedure Manuals.  Licensee agrees to leave its policy and procedure manuals at the Facility for a period of up to sixty (60) days after the Effective Date and New Operator agrees to forward such manuals to a location designated by Licensee, at New Operator's sole cost and expense, at the end of such sixty (60) day period, it being understood and agreed that the maintenance of such manuals until new manuals are delivered to the Facility by New Operator is critical to the ongoing compliance of the Facility after the Effective Date with applicable licensure and certification laws.

11. Computer Systems and Other Property.  New Operator acknowledges and agrees that Licensee has advised it that it intends to remove from the Facility all of the computer hardware and software described in Exhibit D which is connected to Licensee's corporate accounting and medical records network and that it intends to remove any and all other computer systems which not assigned to New Operator and which are subject to a master

lease or master financing arrangement, including, but not limited to, the Kronos time clock and the OmniCell medical supply dispensing unit. Licensee acknowledges and agrees that in order to assist New Operator in ensuring the continued operation of the Facility after the Effective Date in compliance with applicable law and in a manner which does not jeopardize the health and welfare of the residents of the Facility, (i) subject to New Operator's compliance with the Access Conditions, Licensee shall provide New Operator reasonable access to Licensee's information systems and the Facility at least thirty (30) days prior to the contemplated Effective Date in order to obtain the information necessary for the New Operator to install its information systems as of the Effective Date, and (ii) subject to New Operator paying to Licensee on the Effective Date, an amount equal to the rental and service payments described in Exhibit D due with respect thereto for such thirty (30) day period, Licensee shall leave such computer equipment systems and services in place and in effect at the Facility for a period of no more than thirty (30) days after the Effective Date, which period may be extended for an additional thirty (30) days as reasonably requested by New Operator on written notice to Licensee delivered prior to the end of the initial thirty (30) day period and accompanied by the payment due pursuant to Exhibit D for such additional thirty (30) day period. New Operator further acknowledges and agrees that, if Licensee's affiliates, including, but not limited to, SunDance Rehabilitation Corporation, SunScript Pharmacy Corporation and Accelerated Care Plus, LLC, do not continue as vendors of supplies or services at the Facility after the Effective Date, Licensee shall have the right to remove or cause to be removed from the Facility on the Effective Date any property located at the Facility which is owned by any such affiliates, which property is more fully described in Exhibit E hereto. Except as provided in Exhibit D and Exhibit E, all inventory, equipment and property used by Licensee to operate the Facility shall remain at the Facility as of and after the Effective Date.

12.    <u>Further Assurances</u>.  Each of the parties hereto agrees to execute and deliver any and all further agreements, documents or instruments necessary to effectuate this Agreement and the transactions referred to herein or contemplated hereby or reasonably requested by the other party to perfect or evidence their rights hereunder including, without limitation, the filing of a stipulation with the Bankruptcy Court in connection with the Bankruptcy Case seeking approval of this Agreement and the Related Agreements.

13.    <u>Notices</u>.  All notices to be given by either party to this Agreement to the other party hereto shall be in writing, and shall be (a) given in person, (b) deposited in the United States mail, certified or registered, postage prepaid, return receipt requested, or (c) sent by national overnight courier service or by facsimile transmission with confirmed receipt, each addressed as follows:

      (a)     If to New Operator:     c/o Care Realty LLC
                                     411 Hackensack Avenue
                                     7th Floor
                                     Hackensack NJ 07601

Attn: Warren D. Cole
Fax Number: 201-498-0820

with copy to:
Proskauer Rose LLP
1233 20th Street N.W.
Suite 800
Washington DC 20036
Attn : Joseph E. Casson
Fax Number: 202-416-6899

(b)    If to Licensee:
101 Sun Avenue NE
Albuquerque, NM 87109
Attention: Director of Real Estate
Fax Number: 505-468-4998
Attention: General Counsel
Fax Number: 505-468-4747

with copy to:
The Nathanson Group PLLC
1520 Fourth Avenue, Sixth Floor
Seattle, WA 98101
Attn:   Randi S. Nathanson
Fax Number:  206-623-1738

Any such notice shall be deemed delivered when actually received or when delivery is first refused regardless of the method of delivery used. Any party to whom notices are to be sent pursuant to this Agreement may from time to time change its address for further communications thereunder by giving notice in the manner prescribed herein to all other parties hereto. Although either party shall have the right to change its address for notice purposes from time to time, any notice delivered pursuant to this Section 13 to the address set forth in this Section 13 or to such other address as may be hereafter specified in writing in accordance with this Section 13 shall be effective even if actual delivery cannot be made as a result of a change in the address of the recipient of such notice and the party delivering the notice has not received actual written notice in accordance with the provisions of this Section 13 of the current address to which notices are to be sent.

14.    Payment of Expenses.  Each party hereto shall bear its own legal, accounting and other expenses incurred in connection with the preparation and negotiation of this Agreement and the consummation of the transaction contemplated hereby, whether or not the transaction is consummated.

15.    Entire Agreement; Amendment; Waiver.  This Agreement, together with the other agreements referred to herein, constitutes the entire understanding between the parties with respect to the subject matter hereof, superseding all negotiations, prior discussions and preliminary agreements. This Agreement may not be modified or amended except in

writing signed by the parties hereto. No waiver of any term, provision or condition of this Agreement in any one or more instances, shall be deemed to be or be construed as a further or continuing waiver of any such term, provision or condition of this Agreement. No failure to act shall be construed as a waiver of any term, provision, condition or rights granted hereunder.

16.    Assignment. This Agreement binds and inures to the benefit of each party hereto and its successors and proper assigns. Neither party shall be permitted to assign its rights or obligations under this Agreement without the prior consent of the other parties hereto, provided, however, that New Operator shall have the right to assign its rights and interests hereunder upon prior written notice to the other parties.

17.    Joint Venture; Third Party Beneficiaries. Nothing contained herein shall be construed as forming a joint venture or partnership between the parties hereto with respect to the subject matter hereof. The parties hereto do not intend that any third party shall have any rights under this Agreement.

18.    Captions. The section headings contained herein are for convenience only and shall not be considered or referred to in resolving questions of interpretation.

19.    Counterparts. This Agreement may be executed and delivered via facsimile and in one or more counterparts and all such counterparts taken together shall constitute a single original Agreement.

20.    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State, without regard to principles of conflicts of law.

21.    Indemnification. Licensee acknowledges and agrees that it shall be responsible for all Medicare and Medicaid billing and cost reports filed with Medicare and Medicaid with respect to the Facility prior to the Effective Date. Accordingly, in the event it is determined by Medicare or Medicaid that as a result of an audit or a denial of a claim Licensee has been overpaid during such period or has otherwise received payment(s) to which it was not entitled for any reason under applicable Medicare or Medicaid rules and regulations (the "Reimbursement Obligations"), Licensee is and shall be responsible for such Reimbursement Obligations. Accordingly, Licensee agrees to indemnify, defend and hold harmless New Operator from and against any and all claims, damages, liabilities, costs, expenses or other charges incurred by, assessed against or paid by the New Operator (the "Claims") with respect to the Reimbursement Obligations. New Operator further agrees to promptly after receipt thereof provide Licensee with any documentation received by it which it believes may give rise to a claim by New Operator against Licensee under this Section 21 (an "Indemnity Notice"). Upon receipt of an Indemnity Notice, Licensee shall within thirty (30) days after receipt of the Indemnity Notice, in good faith, review the Claim and, if appropriate, Licensee shall, at its sole cost and expense, challenge, appeal or defend against the matter described in the Indemnity Notice within the applicable time periods required by law or agreement with the payor,

and, in such event, no payment shall be due from Licensee to New Operator under this Section 21 until the earlier to occur of (i) the full and final resolution of such claim on terms which require a payment by Licensee or New Operator or (ii) the recoupment from New Operator in whole or in part of the amount which is the subject of such Indemnity Notice in which event payment shall be made within twenty (20) days following notice to Licensee of an event described in subparagraph (i) or (ii) hereof. If Licensee fails or elects not to challenge or appeal the Claims described in the Indemnity Notice, Licensee shall indemnify New Operator against any Claims of New Operator within twenty (20) days following the thirty (30) day period described above.  In addition to the foregoing, Licensee agrees to cooperate with New Operator in responding to any Claim and to make available to New Operator such documents and records as may be necessary to defend any such Claims. All payments not made by Licensee to New Operator when due shall be subject to interest at the Prime Rate as announced in the Money Rates Section of The Wall Street Journal plus two percent (2%) from the date due to the date paid in full.

22.    Excluded Liabilities.  Except as expressly provided in this Agreement, New Operator shall not assume any claims, lawsuits, liabilities, obligations or debts of Licensee, whether statutory, regulatory, judicially created or constitutional ("Excluded Liabilities"), including without limitation: (a) malpractice or other tort claims, statutory or regulatory claims, claims of state or federal agencies, fraud-based claims or claims for breach of contract to the extent any such claims are based on acts or omissions of Licensee occurring on or before the Effective Date; (b) any accounts payable, taxes, or other obligation or liability of Licensee to pay money incurred by Licensee on or prior to the Effective Date; and (c) any other obligations or liabilities arising in whole or in part from Licensee's acts or omissions prior to the Effective Date.

[signature page follows]

IN WITNESS WHEREOF, the parties hereby execute this Agreement as of the day and year first set forth above.

New Operator:      745 HIGHLAND AVENUE OPERATING COMPANY, LLC

By:    THCI Company LLC,
       Its sole member

By:    THCI Holding Company LLC,
       Its managing member

By:    Care Realty, L.L.C.,
       Its managing member

By:    Care Venture, Inc.,
       Its asset manager

By:    _____
Its:   President & Treasurer

Date:  _____

Licensee:      MEDIPLEX OF CONNECTICUT, INC.

By:    _____
Its:   _____

Date:  _____

[signature page to Operations Transfer Agreement]

IN WITNESS WHEREOF, the parties hereby execute this Agreement as of the day and year first set forth above.

New Operator:      745 HIGHLAND AVENUE OPERATING COMPANY, LLC

                By:    THCI Company LLC,
                          Its sole member

                By:    THCI Holding Company LLC,
                          Its managing member

                By:    Care Realty, L.L.C.,
                          Its managing member

                By:    Care Venture, Inc.,
                          Its asset manager

                By:    _____
                Its:    _____

                Date:  _____

Licensee:        MEDIPLEX OF CONNECTICUT, INC.

                By:    _____
                Its:    _____

                Date:  8/30/02

[signature page to Operations Transfer Agreement]

**EXHIBIT A**
**FACILITY INFORMATION**

The 120 bed long term care facility commonly known as Cheshire Convalescent Center  and located at 745 Highland Ave., Cheshire, CT 06410.

**EXHIBIT B**
**LIST OF OPERATING CONTRACTS PROVIDED**
**BY LICENSEE TO NEW OPERATOR**

1. Grinnell Fire Protection Systems Company
2. Huntington Power Equipment
3. KONE, Inc.
4. Audiology Consultants of Connecticut
5. Griffin Hospital
6. Healthdrive Audiology Group
7. Healthdrive Dental Group
8. Healthdrive Dental, Eye, Podiatry
9. Hospice and Palliative Care of Connecticut
10. Montgomery Elevator Company
11. Connecticut Peer Review Organization
12. David A. Raney, MBA, RRA
13. Stericycle, Inc.
14. Hill-Rom
15. Sundance Therapy Management Services

**EXHIBIT C**
**VEHICLES**

The following vehicles are located at the Facility:

(1)    1987 Ford E350 VIN Number 1FTJS35H2HHB75412

(2)    1991 Chevrolet G31606 VIN Number 2GAGG29KOM4121712

The vehicles shall remain at the Facility and Licensee shall transfer title to the vehicles to New Operator on the Effective Date.

**EXHIBIT D**
**COMPUTER HARDWARE AND SOFTWARE EQUIPMENT AND SERVICE**
**INFORMATION**
**AND APPLICABLE RENT AND SERVICE FEE**

1565 - SunBridge Cheshire

***All Workstations include pricing for accessories

| Workstation | MONTHLY | QTY | SERIAL# |
|---|---|---|---|
| HP Vectra VL400, 128MB, 48X CDROM, 10.2GB - BDC Server Workstation | $216.00 | 1 | US04551696 |
| 48" Custom Cabinet CRB8 | | | |
| BayStack ARN Router serial# NBP0191174 | | | |
| ARN 58/64 CSU/DSU (internal component of Router) serial # ADC50124254 | | | |
| ARN V.34 Dial-out Modem (internal component of Router) serial# SPNSN515189 | | | |
| ARN V.34 Console Modem(internal component of Router)SPNSN-1532720 | | | |
| 8Mb FlashCard (internal component of Router) | | | |
| North American 120V Option (internal component of Router) | | | |
| 5' Yellow Crossover Cable | | | |
| 1' CAT-5 Patch Cable | | | |
| 25' RJ11 Telephone Cords | | | |
| Velcro Cable Ties | | | |
| CAT-5 Patch Cables | | | |
| SmartUPS 1400 Rack Mount | | | |
| 8-Port Surge Suppressor | | | |
| HP VE 233 MMX w/Fast Etherlink XL 10/100 PCI TX, 2.1GB - Business Office Workstation | $42.70 | 1 | US81701015 |
| HP VE 233 MMX w/Fast Etherlink XL 10/100 PCI TX, 2.1GB - Medical Records Workstation | $42.70 | 1 | US81903787 |
| HP VE 233 MMX w/Fast Etherlink XL 10/100 PCI TX, 2.1GB - Payroll Workstation | $42.70 | 1 | US83506612 |
| HP Vectra VL400, 128MB, 48X CDROM, 10.2GB - Dietary Workstation | $68.32 | 1 | US04551726 |
| HP Vectra VL400, 128MB, 48X CDROM, 10.2GB - MDS1 Workstation | $68.32 | 1 | US04551666 |
| HP Vectra VL400, 128MB, 48X CDROM, 10.2GB - Administrator Workstation | $68.32 | 1 | US04551639 |
| HP VE 233 MMX w/Fast Etherlink XL 10/100 PCI TX, 2.1GB - DON Workstation | $42.70 | 1 | US81700057 |
| Dell Gxa, Internal CD-ROM Drive, Camera, PictureTel Card, Speakers, & 17" monitor - Video Conference Workstation | $37.00 | 1 | BYHT |
| HP VE 5/233 MMX w/Fast Etherlink XL 10/100 PCI TX, 2.1GB w/JAZ Drive Therapy Workstation | $42.70 | 1 | US83507453 |
| Okidata Microline 591 Dot Matrix Printer - Network | $28.00 | 1 | 711M0170707 |
| HP 4000TN LaserJet Printer w/Duplex Assembly - Network | $54.59 | 1 | USN0007542 |
| HP 4000TN LaserJet Printer w/Duplex Assembly - Network | $54.59 | 1 | n/a |
| HP 4000TN LaserJet Printer w/Duplex Assembly - Network | $54.59 | 1 | n/a |
| HP 670C Printer - Network | $10.34 | 1 | CN54712ZWX |
| HP 1100 Printer - Network | $10.34 | 1 | n/a |
| HP 6LXi Laser Jet Printer - Therapy | $10.34 | 1 | JPHF024248 |
| Kronos Time Clock & Maintenance Badges | $53.60 | 1 | |
| Sub $ TOTAL | $954.85 | | |

| PBX | MONTHLY | QTY | |
|---|---|---|---|
| Financial Transfer of Reponsibility | | | |
| PBX Equipment/Lease (No Equipment/Lease Agreement) | $0.00 | 0 | |
| PBX Maintenance (No Maintenance Agreement) | $0.00 | 0 | |
| Sub $ TOTAL | $0.00 | | |

| IS Monthly Support Costs | MONTHLY | QTY | |
|---|---|---|---|
| Hardware Including: (Estimate for the average facility with leased equipment) | | | |
| Support Contract | $230.00 | | |
| SHG Support: (Telecom, Hardware, Help Desk) | | | |
| Support | $240.00 | | |
| Addon Health Systems including: | | | |

| | | | |
|---|---|---|---|
| Support SHQ | $300.00 | | |
| Support SHS | $250.00 | | |
| Sub $ TOTAL | $1,020.00 | | |
| GRAND TOTAL | $1,574.85 | | |

**EXHIBIT E**
**OTHER PROPERTY TO BE REMOVED FROM FACILITY**